IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| BRETT CENKUS, individually and on behalf of all others similarly situated, | § § § § § | |
| v. | § § | C.A. 1:17-cv-00463 |
| | § | JURY TRIAL DEMANDED |
| BIZBOOST, INC. | § § | |

## PLAINTIFFS' CLASS ACTION COMPLAINT

BRETT CENKUS ("Plaintiff" or "Cenkus"), individually and on behalf of all other persons similarly situated, brings this action against Defendant BIZBOOST, INC. ("Defendant"), and alleges, upon personal knowledge as to his own conduct, and upon information and belief as to the conduct of others, as follows:

## INTRODUCTION

1.     Plaintiff brings this class action against Defendant to secure redress because it willfully violated the TELEPHONE CONSUMER PROTECTION ACT ("TCPA"), 47 U.S.C § 227, *et seq.* by causing unsolicited calls to be made to Plaintiff's and other class members' cellular telephones through the use of an auto-dialer and/or artificial or pre-recorded or artificial voice message.

2.     Defendant made or caused to be made one or more unauthorized calls to Plaintiff's cell phone using an automatic telephone dialing system ("ATDS") or pre-recorded voice for the purpose of soliciting business from Plaintiff.

3.     The TCPA was enacted to protect consumers from unsolicited telephone calls exactly like those alleged in this case.

4.      In response to Defendant's unlawful conduct, Plaintiff files the instant complaint seeking an injunction requiring Defendant to cease all unsolicited telephone calling activities to consumers' cell phones and an award of statutory damages to the members of the Class under the TCPA equal to $500.00 per violation, together with court costs, reasonable attorneys' fees, and treble damages (for knowing and/or willful violations).

## PARTIES

5.      Plaintiff BRETT CENKUS is a citizen of the State of Texas and resides in Austin, Travis County, Texas.

6.      Defendant BIZBOOST, INC. is a corporation organized under the laws of the State of Delaware, and maintains its principal office in Wilmington, DE. Defendant may be served with process by serving Registered Office Service Company at 203 Northeast Front Street, Suite 101, Milford, Delaware 19963.

7.      Plaintiff does not yet know the identity of Defendants' employees/agents that had direct, personal participation in or personally authorized the conduct found to have violated the statute, and were not merely tangentially involved. They are named tentatively, as  numerous District Courts have found that individual officers/principals of corporate entities may be personally liable (jointly and severally) under the TCPA if they had direct, personal participation in or personally authorized the conduct found to have violated the statute, and were not merely tangentially involved. *Texas v. American Blastfax, Inc.*, 164 F.Supp.2d 892, 899 (W.D. Tex. 2001) ("*American Blastfax*"); *Sandusky Wellness Center, LLC v. Wagner Wellness, Inc.*, 2014 WL 1333472, at * 3 (N.D. Ohio March 28, 2014); *Maryland v. Universal Elections*, 787 F.Supp.2d 408, 415-16 (D.Md. 2011) ("*Universal Elections*"); *Baltimore-Washington Tel Co. v. Hot Leads Co.*, 584 F.Supp.2d 736, 745 (D.Md. 2008); *Covington & Burling v. Int'l Mktg. &*

*Research, Inc.*, 2003 WL 21384825, at *6 (D.C.Super Apr. 17, 2003); *Chapman v. Wagener Equities, Inc.* 2014 WL 540250, at *16-17 (N.D.Ill. Feb. 11, 2014); *Versteeg v. Bennett, Deloney & Noyes, P.C.*, 775 F.Supp.2d 1316, 1321 (D.Wy.2011) ("*Versteeg*"). Upon learning of the identities of said individuals, Plaintiff will move to amend to name the individuals as defendants.

8.      Plaintiff is informed and believes and thereon alleges that at all relevant times, each and every Defendant was acting as an agent and/or employee of each of the other Defendants and was the owner, agent, servant, joint venture and employee, each of the other and each was acting within the course and scope of its ownership, agency, service, joint venture and employment with the full knowledge and consent of each of the other Defendants. Plaintiff is informed and believes and thereon alleges that each of the acts and/or omissions complained of herein was made known to, and ratified by, each of the other Defendants.

9.      At all times mentioned herein, each and every Defendant was the successor of the other and each assumes the responsibility for each other's acts and omissions.

## JURISDICTION & VENUE

10.      This Court has subject matter jurisdiction under 28 U.S.C. § 1331, as this action arises under the TCPA, which is a federal statute.

11.      The Court has personal jurisdiction over Defendant because they conduct significant business in this District, and the unlawful conduct alleged in this Complaint occurred in, was directed to, and/or emanated from this District.

12.      This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2) because the matter in controversy in this civil action exceeds the sum or value of $5,000,000.00, exclusive of interests and costs, and at least one member of the putative class is a citizen of a state different from Defendant.  Furthermore, the Plaintiff Class consists of at least

one hundred members.

13.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because the wrongful conduct giving rise to this case occurred in, was directed to, and/or emanated from this District.

14.     Defendant are subject to specific personal jurisdiction in this District because they have continuous and systematic contacts with this District through their telemarketing efforts that target this District, and the exercise of personal jurisdiction over Defendant in this District does not offend traditional notions of fair play or substantial justice.

## LEGAL BASIS FOR THE CLAIMS

15.     In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry.     In doing so, Congress recognized that "[u]nrestricted telemarketing…can be an intrusive invasion of privacy…" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243 § 2(5) (1991) (codified at 47 U.S.C. § 227).

16.     Specifically, the TCPA restricts telephone solicitations (*i.e.,* telemarketing) and the use of automated telephone equipment. The TCPA limits the use of automatic dialing systems, artificial or prerecorded voice messages, SMS text messages, and fax machines. It also specifies several technical requirements for fax machines, autodialers, and voice messaging systems—principally with provisions requiring identification and contact information of the entity using the device to be contained in the message.

17.     In its initial implementation of the TCPA rules, the FCC included an exemption to its consent requirement for prerecorded telemarketing calls.  Where the caller could demonstrate an "established business relationship" with a customer, the TCPA permitted the caller to place pre-recorded telemarketing calls to residential lines.  The new amendments to the TCPA,

effective October 16, 2013, eliminate this established business relationship exemption. Therefore, all pre-recorded telemarketing calls to residential lines and all ATDS calls to wireless numbers violate the TCPA if the calling party does not first obtain express written consent from the called party.

18.     As of October 16, 2013, unless the recipient has given prior express written consent,[1] the TCPA and Federal Communications Commission (FCC) rules under the TCPA generally:

- Prohibits solicitors from calling residences before 8 a.m. or after 9 p.m., local time.

- Requires solicitors provide their name, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which that person or entity may be contacted.

- Prohibits solicitations to residences that use an artificial voice or a recording.

- Prohibits any call or text made using automated telephone equipment or an artificial or prerecorded voice to a wireless device or cellular telephone.

- Prohibits any call made using automated telephone equipment or an artificial or prerecorded voice to an emergency line (e.g., "911"), a hospital emergency number, a physician's office, a hospital/health care facility/elderly room, a cellular telephone, or any service for which the recipient is charged for the call.

- Prohibits autodialed calls that engage two or more lines of a multi-line business.

- Prohibits unsolicited advertising faxes.

---

[1] Prior express written consent means "an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered.  47 C.F.R. § 64.1200(f)(8).

• Prohibits certain calls to members of the National Do Not Call Registry.

19.    Furthermore, in 2008, the FCC issued a Declaratory Ruling reiterating that "a company on whose behalf a telephone call is made bears the responsibility for any violations." In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, CG Docket No. 02-278, 23 FCC Rcd 559, 564-65 (¶ 10) (2008).  This ruling specifically recognized "on behalf of " liability in the context of an autodialed or prerecorded message call sent to a consumer by a third party on another entity's behalf under 47 U.S.C. § 227(b).

20.    Accordingly, the entity can be liable under the TCPA for a call made on its behalf, even if the entity did not directly place the call.  Under those circumstances, the entity is deemed to have initiated the call through the person or entity.

## COMMON FACTUAL ALLEGATIONS

21.    Defendant BizBoost is a self-described "leader in alternative business financing" that specializes in quickly providing working capital to small businesses. BizBoost claims to have loaned out over $5.3 billion to over 110,000 businesses. On information and belief, Defendant farms consumers' contact information and places telemarking calls to these consumers in order to market its business financing services.

22.    Defendant place tens of thousands of telemarking calls to individuals nationwide. Unfortunately for consumers, Defendant, for its telemarketing scheme, utilized (and continues to utilize) a sophisticated telephone dialing system to call individuals *en masse* promoting its services.  Defendant obtained these telephone numbers (*i.e.*, leads) by purchasing marketing lists containing consumers' telephone numbers.

23.    In Defendant's overzealous attempt to market services, it placed (and continues to place) phone calls to consumers who never provided consent to call and to consumers having no

relationship with Defendant. Defendant knowingly made (and continues to make) these telemarketing calls without the prior express written consent of the call recipients. As such, Defendant not only invaded the personal privacy of Plaintiff and members of the putative Class, but also intentionally and repeatedly violated the TCPA.

## FACTS SPECIFIC TO PLAINTIFF BRETT CENKUS

24.     Beginning in or around November 2016, Defendant contacted Plaintiff on his cellular telephone number *via* ATDS, as defined by 47 U.S.C. § 227(a)(1), numerous times without first obtaining Plaintiff's written consent.

25.     In fact, to the extent Plaintiff ever consented to Defendant's marketing calls, Plaintiff revoked his consent during a conversation with Defendant's call center representative.

26.     Plaintiff received all calls as described above on his cellular telephone assigned a number ending in -1000.

27.     Plaintiff is informed and believes that Defendant utilizes internet generated spoof numbers to place its marketing calls to consumers. Defendant has contacted Plaintiff using a variety of numbers, including numbers with the area code prefix (385).

28.     On November 8, 2016, at approximately 4 p.m. central time, Plaintiff Cenkus answered on of Defendant's calls. Plaintiff's caller ID read "(385) 383-3007" during this particular call.

29.     After answering Defendant's call, he was greeted by a pre-recorded voice advertising Defendant's business loan services.

30.     Shortly thereafter, a human came on the line to attempt to sell Defendant's business loan services to Plaintiff.

31.     Plaintiff was annoyed by the intrusive calls; therefore, he decided to research the phone number from which he had been receiving the calls.  Plaintiff viewed the calls as an invasion of his privacy and a disruption to her work day.

32.     At the time of the calls, Plaintiff did not have a business relationship with Defendant, nor did Plaintiff request information from Defendant about its products or services.

33.     It was obvious to Plaintiff that Defendant was engaged in a marketing campaign wherein Defendant contacted a large number of consumers using an autodialer.

34.     Plaintiff believes his number was either dialed randomly or from a database obtained by Defendant, because Plaintiff never contacted Defendant or authorized Defendant to contact her.

35.     Plaintiff believed Defendant called him using an ATDS because Plaintiff received a large number of calls, indicating to Plaintiff, based on his experience that his cell phone number was stored in an electronic database or he was randomly dialed.  Furthermore, the first thing that he heard upon answering one of Defendant's calls was prerecorded voice, indicating a live person had not dialed Plaintiff directly.

36.     On information and belief, Defendant utilized an automated system to call Plaintiff on every occasion.

37.     On information and belief, and based on the circumstances of the all the calls, Defendant called Plaintiff using an ATDS.

38.     Plaintiff understood the purpose of Defendant's calls was to solicit business from Plaintiff.

39.     The telephone number Defendant called was assigned to a cellular telephone service for which charges incur for incoming calls pursuant to 47 U.S.C. § 227(b)(1).

40.     Plaintiff pays the bill associated with the cellular telephone assigned the number ending in -1000.

41.     Plaintiff is the regular carrier and exclusive user of the cellular telephone assigned the number ending in -1000.

42.     Defendant's calls constituted calls that were not for emergency purposes as defined by 47 U.S.C. § 227(b)(1(A)(i).

43.     Plaintiff did not provide Defendant prior express written consent to receive calls to his cellular telephone utilizing an ATDS or artificial or pre-recorded voice, pursuant to 47 U.S.C. § 227 (b)(1)(A).

44.     All calls Defendant made to Plaintiff violate 47 U.S.C. § 227(b)(1).

45.     Plaintiff has reason to believe Defendant has called, and continues to call, thousands of wireless telephone customers to market its products and services without consent required by the TCPA.

46.     In order to redress injuries caused by Defendant's violations of the TCPA, Plaintiff, on behalf of himself and a class of similarly situated individuals, brings suit under the TCPA, 47 U.S.C. § 227, *et seq.*, which prohibits certain unsolicited voice and text calls to cell phones.

47.     On behalf of the Plaintiff Class, Plaintiff seeks an injunction requiring Defendant to cease all wireless telemarketing and spam activities and an award of statutory damages to the class members, together with costs and reasonable attorneys' fees.

## CLASS ACTION ALLEGATIONS

A.     CLASS ALLEGATIONS

48.     Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23(a),

(b)(2), and (b)(3) on behalf of himself and the following class defined as follows (the "Class"):

> All individuals in the United States who received a call made by or on behalf of Defendant to the individual's cellular telephone through the use of an automatic telephone dialing system, or pre-recorded voice, or any other device having the capacity to dial numbers without human intervention, from the four (4) years prior to the filing of this Complaint, up to the date the Class is certified, where Defendant's records fail to indicate prior express written consent from the recipient to make such call.

49.     The following individuals are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest, and its current or former employees, officers, and directors; (3) Plaintiff's counsel and Defendant's counsel; (4) persons who properly execute and file a timely request for exclusion from the Class; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against Defendant have been fully and finally adjudicated and/or released.

50.     This suit seeks only damages, statutory penalties, and injunctive relief for recovery of economic injury on behalf of the Class, and it expressly is not intended to request any recovery for personal injury and claims related thereto.

51.     Plaintiff reserves the right to expand the Class definition to seek recovery on behalf of additional persons as warranted as facts are learned in further investigation and discovery.

52.     Plaintiff and members of the Class were harmed by Defendant's acts in at least the following ways: Defendant, either directly or through agents, illegally contacted Plaintiff and the Class members *via* their cellular telephones by using an ATDS, thereby causing Plaintiff and the Class members to incur certain cellular telephone charges or reduce cellular telephone time

for which Plaintiff and the Class members previously paid, and invading the privacy of Plaintiff

and the Class members.

## B.   NUMEROSITY

53.    The exact size of the Class is unknown and not available to Plaintiff at this time,

but it is clear individual joinder is impracticable.

54.    On information and belief, Defendant made telephone calls to thousands of

consumers who fall into the definition of the Class.   Members of the Class can be easily

identified through Defendant's records.

## C.   COMMONALITY AND PREDOMINANCE

55.    There are many questions of law and fact common to the claims of Plaintiff and

the Class, and those questions predominate over any questions that may affect individual

members of the Class.

56.    Common questions for the Class include, but are not necessarily limited to the

following:

   a.    Whether Defendant's conduct violated the TCPA;

   b.    Whether Defendant or its agent(s) made telephone calls to consumers who
         did not previously provide Defendant and/or its agents with prior express
         written consent to receive such phone calls after October 16, 2013;

   c.    Whether Defendant or its agent(s) systematically made telephone calls to
         consumers whose telephone numbers were registered with the National Do
         Not Call Registry.

   d.    Whether members of the Class are entitled to treble damages based on the
         willfulness of Defendant's conduct;

   e.    Whether Defendant or its agent(s) systematically made telephone calls to
         consumers after October 16, 2013 (other than calls made for emergency
         purposes or made with the prior express written consent of the called
         party) using any automatic dialing system or pre-recorded voice to any
         telephone number assigned to a cellular phone service; and

f.      Whether Defendant and its agent(s) should be enjoined from engaging in such conduct in the future.

## D.      TYPICALITY

57.     Plaintiff's claims are typical of the claims of the other members of the Class.

58.     Plaintiff and the Class sustained damages as a result of Defendant's uniform wrongful conduct during transactions with Plaintiff and the Class.

## E.      ADEQUATE REPRESENTATION

59.     Plaintiff will fairly and adequately represent and protect the interests of the Class, and has retained counsel competent and experienced in complex class actions.

60.     Plaintiff has no interest antagonistic to those of the Class, and Defendant has no defenses unique to Plaintiff.

## F.      POLICIES GENERALLY APPLICABLE TO THE CLASS

61.     This class action is appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the Class as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class members, and making final injunctive relief appropriate with respect to the Class as a whole.

62.     Defendant's practices challenged herein apply to and affect the Class members uniformly, and Plaintiff's challenge of those practices hinges on Defendant's conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiff.

## G.      SUPERIORITY

63.     This case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy given that joinder of all parties is impracticable.

64.     The damages suffered by the individual members of the Class will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions.

65.     Thus, it would be virtually impossible for the individual members of the Class to obtain effective relief from Defendant's misconduct.

66.     Even if members of the Class could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this FAC.

67.     By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Economies of time, effort and expense will be fostered and uniformity of decisions ensured.

///

///

///

## FIRST CAUSE OF ACTION

### VIOLATIONS OF THE TCPA, 47 U.S.C. § 227, *et seq.*

### (By Plaintiff, Individually and On Behalf of the Class, Against All Defendants)

68.     Plaintiff re-alleges and incorporates by reference each preceding paragraph as though set forth at length herein.

69.     Defendant made unsolicited and unauthorized calls using an ATDS or pre-recorded voice to Plaintiff's and the Class Members' cellular telephones for the purpose of marketing products and/or services to Plaintiff and the Plaintiff Class Members.

70.     Defendant made the calls without prior express written consent of the Plaintiff and Plaintiff Class Members.

71.     The calls Defendant placed to Plaintiff invaded Plaintiff's privacy and disrupted her work day.

72.     The foregoing acts and omissions of Defendant constitutes numerous and multiple violations of the TCPA, including but not limited to each and every one of the above-cited provisions of 47 U.S.C. § 227, *et. seq.*

73.     As a result of Defendant's violations of 47 U.S.C. § 227, *et. seq.*, Plaintiff and the Plaintiff Class Members are entitled to an award of $500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

74.     Because Defendant had knowledge that Plaintiff and the Plaintiff Class Members did not consent to the receipt of the aforementioned telephone solicitations, the Court should, pursuant to 47 U.S.C. § 227(b)(3)(C), treble the amount of statutory damages recoverable by the Plaintiff and Plaintiff Class Members.

75.     Plaintiff and the Plaintiff Class Members are also entitled to and seek injunctive relief prohibiting such conduct in the future.

## SECOND CAUSE OF ACTION
### KNOWING AND/OR WILLFUL VIOLATIONS OF THE TCPA, 47 U.S.C. § 227, *et seq.*

**(By Plaintiff, Individually and On Behalf of the Class, Against All Defendants)**

76.     Plaintiff re-alleges and incorporates by reference each preceding paragraph as though set forth at length herein.

77.     The foregoing acts and omissions of Defendants constitute numerous and multiple knowing and/or willful violations of the TCPA, including but not limited to each and every one of the above cited provisions of 47 U.S.C. § 227, *et seq.*

78.     As a result of Defendant(s)' violations of 47 U.S.C. § 227, *et seq.*, Plaintiff and the Class Members are entitled to an award of $1,500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

79.     Plaintiff and the Class members are also entitled to and seek injunctive relief prohibiting such conduct in the future.

## ATTORNEY'S FEES

80.     Each and every allegation contained in the foregoing paragraphs is re-alleged as if fully rewritten herein.

81.     Plaintiff is entitled to recover reasonable attorney fees pursuant to Fed. R. Civ. P. 23(h) and request the attorneys' fees be awarded when a class is certified.

## JURY DEMAND

82.     Plaintiff, individually and on behalf of the Plaintiff Class, demand a jury trial on all issues triable to a jury.

## RELIEF REQUESTED

WHEREFORE, Plaintiff, individually and on behalf of the Plaintiff Class, pray for the following relief:

a.     An order certifying this matter as a class action with Plaintiff as Class Representative, and designating Hughes Ellzey, LLP and Kristensen Weisberg, LLP as lead Class Counsel.

b.     An award of actual and statutory damages for each and every negligent violation to each member of the Class pursuant to 47 U.S.C. § 227(b)(3)(B);

c.     An award of actual and statutory damages for each and every knowing and/or willful violation to each member of the Class pursuant to 47 U.S.C § 227(b)(3)(B);

d.       An injunction requiring Defendant and its agent(s) to cease all unsolicited telephone calling activities, and otherwise protect the interests of the Class, pursuant to 47 U.S.C. § 227(b)(3)(A);

e.       Pre-judgment and post-judgment interest on monetary relief;

f.       An award of reasonable attorneys' fees and court costs in this action; and

g.       All other and further relief as the Court deems necessary, just, and proper.


Dated:  May 16, 2017

Respectfully Submitted,


/s/ W. Craft Hughes
W. Craft Hughes
Texas bar No. 24046123
Attorney-in-charge
Jarrett L. Ellzey
Texas bar No. 24040864
**HUGHES ELLZEY, LLP**
2700 Post Oak Blvd., Ste. 1120
Galleria Tower I
Houston, TX 77056
Phone: (713) 554-2377
Fax: (888) 995-3335
craft@hughesellzey.com
jarrett@hughesellzey.com

John P. Kristensen
*Pro Hac Vice* Application to follow
**KRISTENSEN WEISBERG, LLP**
12540 Beatrice Street, Suite 200
Los Angeles, CA 90066
Phone: (310) 507-7924
Fax: (310) 507-7906
john@kristensenlaw.com

**ATTORNEYS FOR PLAINTIFF
AND THE PROPOSED CLASS**